# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL CORONA MARTINEZ,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 1:26-cv-07903-SAB-HC<br>A-Number: 222-597-734<br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT, DENYING RESPONDENTS' MOTION TO DISMISS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br>(ECF Nos. 1, 2, 10) |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 9, 15, 17.)

## I.

## BACKGROUND

Petitioner is from Mexico and first entered the United States on or around May 21, 2019, on a B2 nonimmigrant visa with a temporary period not to exceed November 20, 2019. (ECF No. 1 at 7; ECF No. 1-2 at 2; ECF No. 10 at 7.[1]) Petitioner never left the United States as required. (ECF No. 10 at 7.) Instead, Petitioner formed a life in the United States and has continuously

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

lived in Utah for the past seven years. Petitioner indicates that he is gainfully employed and supports his partner and two daughters financially. (ECF No. 1 at 7.) Petitioner holds a Driver Privilege Card, which recently expired in July 2026. (Id.; ECF No. 1-3 at 2.) Petitioner indicates he has no criminal history and the I-213 submitted by Respondents confirms this information. (ECF No. 1 at 7; ECF No. 10 at 13.)

On September 16, 2026, U.S. Immigration and Customs Enforcement ("ICE") conducted a targeted operation in the vicinity of a residential apartment complex "previously identified through prior investigations as a frequent residence for aliens living in the United States without lawful status." (ECF No. 10 at 12.) While conducting surveillance, ICE ran the license plate on a car belonging to Petitioner. In doing so, ICE learned that the registered owner of the vehicle had an immigration record indicating that he was unlawfully present in the United States. ICE stopped the vehicle, identified themselves to Petitioner, and conducted a field investigation to confirm Petitioner's identity. Petitioner presented his Utah Driver Privilege Card and indicated that he did not possess any documents allowing him to remain in the United States lawfully. (Id.) According to the I-213, Petitioner "was placed under arrest without an administrative warrant, however, a supervisor executed an administrative warrant post-arrest." (Id. at 13.) The I-213's narrative regarding the warrantless arrest reads as follows:

> ERO officers stated to [Petitioner] that he was under arrest for being in the country illegally. [Petitioner] demonstrated no strong ties to the community and presented a high likelihood of escape due to failing to identify himself initially at the vehicle stop and entering the country illegally without inspection, further supporting the need for immediate custodial action. He was transported to the Salt Lake City Field Office for processing.

(ECF No. 10 at 13.) However, Petitioner has a different version of events. According to Petitioner, he was pulled over by an unmarked vehicle while on his way to work. He then presented his driver's privilege card, and when asked if he had any other identification on him and he responded no, ICE immediately arrested him. Petitioner indicates that he did not attempt to flee and did not resist arrest. Once handcuffed and placed in the unmarked vehicle, ICE agents told Petitioner that "their reason for stopping him was that they were looking for a different person named Miguel," who was not Petitioner. (ECF No. 1 at 8.)

On September 16, 2026, the day of Petitioner's arrest, the Department of Homeland Security ("DHS") executed a "post-arrest" I-200 administrative warrant and an I-862 Notice to Appear charging Petitioner as removable under 8 U.S.C. § 1227(a)(1)(B). (ECF No. 10 at 7, 13, 15.) DHS first transferred Petitioner to a detention facility in Southwestern Wyoming, but after three nights, DHS transferred him back to Utah and subsequently flew him out to the California City Detention Facility, where he is currently detained. (ECF No. 1 at 3, 6.) On September 30, 2026, approximately two weeks after Petitioner's arrest, DHS issued an I-286 Notice of Custody Determination pursuant to 8 U.S.C. § 1226. (ECF No. 10 at 17.) Petitioner's removal proceedings are ongoing with no order of removal in place.[2]

On September 25, 2026, Petitioner filed a petition for writ of habeas corpus and motion for TRO arguing that he is entitled to immediate release because Respondents (1) violated 8 U.S.C. §§ 1226(a), 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) when they arrested him without a warrant and without an individualized flight risk determination; (2) violated 8 C.F.R. § 287.3(d) when they failed to engage in a custody determination within 48 hours of his arrest; and (3) violated the substantive and procedural due process clause of the Fifth Amendment arising from his protected liberty interest after seven years of living within the United States. (ECF No. 1 at 19–22; ECF No. 2 at 7–15.) On October 5, 2026, Defendants filed a motion to dismiss and answer to the petition, arguing that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) pending removal proceedings and must exhaust his administrative remedies. (ECF No. 10.) On October 10, 2026, Petitioner filed a reply. (ECF No. 12.)

## II.

## DISCUSSION

### A. Exhaustion

Respondents argue that the petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 10 at 3–4.)

///

[2] See Executive Office of Immigration Review, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited Nov. 10, 2026).

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

Petitioner argues that although an immigration judge ("IJ") can redetermine custody, an IJ "cannot decide whether DHS lawfully arrested Petitioner, cannot supply an escape-risk finding that was never made before the arrest, and cannot cure a custody determination made twelve days late." (ECF No. 12 at 10.) Petitioner also contends that he did not "bypass any process" because "no custody determination existed until after this case was filed." (Id.)

The Court finds that the prudential exhaustion requirement should be waived. As noted by Petitioner, "no custody determination existed until after this case was filed," (ECF No. 12 at 10), so it is unclear what administrative remedies Petitioner should have been pursued before filing his habeas petition. Additionally, Petitioner challenges his detention on due process grounds. See Chudi v. Chestnut, No. 1:26-CV-07980-JLT-CDB, 2026 WL 3371683, at *3 (E.D. Cal. Nov. 6, 2026) (waiving exhaustion requirement for "claim that [petitioner's] initial detention violated 8 U.S.C. § 1226(a) because DHS failed to comply with the warrant requirement and did not provide a pre-deprivation notice or hearing"); Medvezhov v. Warden,

Golden State Annex Det. Facility, No. 1:26-CV-05918-KES-SAB (HC), 2026 WL 2234501, at *2 (E.D. Cal. Aug. 3, 2026) ("Petitioner raises a constitutional claim, and the immigration court does not have jurisdiction to address constitutional issues."); Gagik T. v. Chestnut, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026) ("When, as here, the remaining claim is a constitutional one beyond the agency's competence to resolve, the prudential exhaustion requirement does not bar review.").

**B. Warrantless Arrest**

In Count One of the petition, Petitioner asserts a violation of 8 U.S.C. § 1226(a) for his arrest without a warrant. (ECF No. 1 at 19.) In Count Four, Petitioner asserts a violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) for his warrantless arrest without a determination of the likelihood of escape. (Id. at 21.)

> "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." *Chogllo Chafla*, 2025 WL 2688541, at *11. "Section 1226(a) plainly states: '*On a warrant issued by the Attorney General*, a [noncitizen] may be arrested and detained ....'" *Chogllo Chafla*, 2025 WL 2688541, at *11 (quoting 8 U.S.C. § 1226(a)). "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Id.*

J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025). However, immigration officers may execute warrantless arrests under 8 U.S.C. § 1357(a), which provides:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]

8 U.S.C. § 1357(a)(2).

Given that the government's records explicitly state Petitioner was arrested without a warrant, (ECF No. 10 at 13), Respondents do not assert a warrantless exception applies, and the record also indicates Petitioner was detained before the commencement of his removal

proceedings, (ECF No. 10 at 13), "Petitioner's initial arrest and detention were therefore done in violation of § 1226(a) and its implement[ing] regulations." Andres G.B. v. Warden, California City Immigration Processing Center, No. 1:26-CV-06810-TLN-CSK, 2026 WL 3181254, at *2 (E.D. Cal. Oct. 23, 2026). Accord Mendoza Vargas v. Andrews, No. 1:26-CV-08618-DAD-JDP (HC), 2026 WL 3269938, at *1 (E.D. Cal. Oct. 30, 2026) ("conclud[ing] that petitioner is entitled to habeas relief" where "there is no evidence before the court that petitioner was arrested pursuant to a warrant during the traffic stop as required by § 1226(a)" and respondent does not "argue that petitioner's warrantless arrest falls within the exception to the warrant requirement set forth in the Immigration and Nationality Act"). Accordingly, the Court finds that Petitioner is entitled to relief on Counts One and Four of the petition.

**C. Failure to Provide Custody Determination Within Forty-Eight Hours of Arrest**

In Count Five, Petitioner asserts a violation of 8 C.F.R. § 287.3(d) for failure to make a custody determination within forty-eight hours. (ECF No. 1 at 22.)

> Following a warrantless arrest, an examination of the noncitizen must follow "without unnecessary delay." 8 U.S.C. § 1357(a)(2). The procedural regulations governing the post-arrest examination are laid out in 8 C.F.R. § 287.3, which requires "an officer other than the arresting officer" to make "a determination ... within 48 hours of the arrest, except in the event of an emergency" as to "whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest ... will be issued." 8 C.F.R. § 287.3(a), (d).

Samol v. Casey, No. 26-CV-5487-BJC-DEB, 2026 WL 3373377, at *2 (S.D. Cal. Nov. 6, 2026). "In short . . . if a warrantless arrest is made, then there must be a separate determination within 48 hours of the arrest, barring any emergency or extraordinary circumstances, as to whether the noncitizen will be released or detained." Id.

Here, Petitioner's notice of custody determination is dated September 30, 2026, fourteen days after Petitioner's arrest and five days after the instant habeas petition was filed. (ECF No. 10 at 17.) Respondents do not claim, and there is nothing in the record demonstrating, that there was any emergency or extraordinary circumstances that prevented Respondents from making an initial custody determination within forty-eight hours. Accordingly, the Court finds that in failing to provide Petitioner with an initial custody determination within forty-eight hours of his arrest,

Respondents violated 8 C.F.R. § 287.3(d), and Petitioner is entitled to relief on Count Five of the petition.

**D. Appropriate Relief**

"The prerequisites to arrest and detention outlined in § 1226(a) and its implementing regulations are unequivocal and do not afford the government forgiveness simply by providing a bond hearing after the fact." Emilio A.L. v. Warden of the Cent. Valley Det. Facility, No. 1:26-CV-06311-TLN-CKD, 2026 WL 2475740, at *4 (E.D. Cal. Aug. 24, 2026) (citing Romero-Perez v. Blanche, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *4 (D. Nev. June 15, 2026) ("Critically, Respondents cannot cure [invalid warrant and failure to conduct custody determination] violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to prevent unjustified detention in the first instance.")). Judges in this district have found that "where 'the government fails to provide a noncitizen with the statutory protections of § 1226(a), that failure constitutes a breach of both his statutory and due process rights[,]'" and "mandate Petitioner's immediate release." Zetino Jaco v. Chestnut, No. 1:26-cv-08307-DC-CKD, 2026 WL 3347076, at *4 (E.D. Cal. Nov. 5, 2026) (quoting Ramirez-Trejo v. Andrews, No. 1:26-cv-08372-DC-CSK, 2026 WL 3205146, at *2 (E.D. Cal. Oct. 26, 2026)). Accord Mendoza Vargas, 2026 WL 3269938, at *1 (finding "the government's failure to follow the procedures set forth by 8 U.S.C. § 1226(a) warrants a petitioner's immediate release").

Based on the foregoing, and given Petitioner's lack of criminal history, the Court finds that Petitioner's immediate release, rather than a post-hoc bond hearing, is the appropriate relief.[3]

**III.**

**ORDER**

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is GRANTED on Counts One, Four, and Five.
2. Petitioner's motion for temporary restraining order (ECF No. 2) is DENIED as moot.

[3] In light of this conclusion, the Court declines to address Counts Two and Three.

3. Respondents' motion to dismiss (ECF No. 10) is DENIED.
4. Respondents SHALL IMMEDIATELY RELEASE Petitioner Miguel Angel Corona Martinez (A-Number: 222-597-734) and SHALL NOT impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing.
5. Respondents SHALL RETURN all of Petitioner's documents and possessions upon his release from custody.
6. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.[4]
7. The Clerk of Court is DIRECTED to serve the California City Immigration Processing Center with a copy of this Order.
8. The Clerk of Court is DIRECTED to CLOSE the case.

IT IS SO ORDERED.

Dated: **November 12, 2026**

STANLEY A. BOONE
United States Magistrate Judge

---

[4] If legally sufficient circumstances justify arrest without notice in advance, Respondents SHALL provide a post-deprivation hearing consistent with the requirements set forth here within seven days of the arrest. If Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal and SHALL provide a bond hearing in the timeframe required by law.